UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| U.S. Equal Employment Opportunity Commission )<br>Baltimore Field Office )<br>   31 Hopkins Plaza, Suite 1432 )<br>   Baltimore, MD 21201 )<br>)<br>)<br>   Plaintiff, )<br>)<br>            v. )<br>)<br>Didlake, Inc. )<br>   8621 Breeden Ave )<br>   Manassas, VA 20110 )<br>)<br>   Defendant. ) | Civil Action No. 8:23-cv-2618<br><br><br><br><br>**COMPLAINT**<br><br><br>JURY TRIAL DEMAND |

## I. NATURE OF THE ACTION

This is an action brought under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful discrimination on the basis of disability and retaliation and to provide appropriate relief to Charging Parties Meazu Gobena ("Gobena"), Winsome Powell ("Powell"), and Yenenesh Abebe ("Abebe"), and to similarly aggrieved qualified individuals with disabilities. Defendant, Didlake, Inc. ("Didlake" or "Defendant"), is an Ability One government contractor that hires disabled individuals with knowledge of their disabilities. Although nearly 80 percent of its employees are disabled, it has failed to provide reasonable accommodations to deaf and hard-of-hearing maintenance and janitorial workers, and it has maintained inflexible leave and fitness-for-duty policies that have resulted in denial of accommodations and loss of employment for disabled workers in violation of the ADA.

## II.   JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706 of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-5, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper in the United States District Court for the District of Maryland, Southern Division, as employment practices alleged to be unlawful were committed throughout Maryland, including within the jurisdiction of this Court at Defendant's National Institute of Standards and Technology job site in Gaithersburg, Maryland; Defendant's Food and Drug Administration job site in White Oak, Maryland; Defendant's Department of Energy job site in Germantown, Maryland; and Defendant's Defense Information Systems Agency job site in Fort Meade, Maryland. *See* 42 U.S.C. § 12117(a), incorporating 42 U.S.C. § 2000e-5(f)(3).

## III.   PARTIES

3. Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") is the agency of the United States of America charged with the administration, interpretation, and enforcement of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706 of Title VII, 42 U.S.C. § 2000e-5, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4. Didlake is a Virginia corporation with operations throughout the District of Columbia, Virginia, and Maryland, and has continuously had at least fifteen employees.

5. At all relevant times, Didlake has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g), (h).

6. At all relevant times, Didlake has been a "covered entity" under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

### IV.     CONDITIONS PRECEDENT

7. All conditions precedent to the institution of this lawsuit have been fulfilled.

   (a) More than thirty days prior to the institution of this lawsuit, Charging Parties Gobena, Powell, and Abebe filed Charges of Discrimination with the EEOC alleging violations of the ADA by Didlake.

8. On December 21, 2022, the EEOC issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant had violated the ADA by discriminating against Gobena because of her disability, including by denying her reasonable accommodations and terminating her, and reasonable cause to believe that Defendant had violated the ADA by applying inflexible leave and fitness-for-duty policies to qualified individuals with disabilities and by retaliating against qualified individuals with disabilities for engaging in the protected activity of requesting reasonable accommodations.

9. On December 21, 2022, the EEOC issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant had violated the ADA by discriminating against Powell because of her disability, and reasonable cause to believe that Defendant had violated the ADA by denying reasonable accommodations to a class of deaf and hard-of-hearing employees working in hourly maintenance and janitorial positions.

10. On December 21, 2022, the EEOC issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant had violated the ADA by discriminating against Abebe because of her disability, and reasonable cause to believe that Defendant had violated the ADA by denying reasonable accommodations to a class of deaf and hard-of-hearing employees working in hourly maintenance and janitorial positions.

11. After issuing its Letters of Determination, the EEOC engaged in communications with Defendant to provide it the opportunity to remedy the unlawful employment practices described in each Letter of Determination described above.

12. On May 15, 2023, the EEOC issued to Defendant Notices of Conciliation Failure advising it that the EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC as to the Gobena, Powell, and Abebe charges.

### V. STATEMENT OF CLAIMS

**Restricting Leave to FMLA Eligibility and Duration**

13. Since at least 1999, Didlake has maintained a policy (first Policy M-153, then Policy 1503) ("the inflexible medical leave policy") for all of its job sites stating that "[f]or employees who are unable to return to work in the allowed time [at the end of leave approved under the Family and Medical Leave Act FMLA] or employees who are not eligible for FMLA[,] Didlake, Inc. will place those employees on inactive status. When the individual is cleared to return to work without restrictions Didlake, Inc. will accept their application for employment for any open position they may be qualified for."

14. Pursuant to its inflexible medical leave policy, Didlake automatically terminates qualified individuals with disabilities who request medical leave but are not eligible for FMLA leave.

15. Pursuant to its inflexible medical leave policy, Didlake has failed to engage in the interactive process and to provide reasonable accommodations, and has instead terminated qualified individuals with disabilities despite the availability of unpaid leave as a reasonable accommodation. For example:

   (a) Because she was not FMLA eligible when she required leave at the end of her high-risk pregnancy, including to undergo and recover from an emergency caesarian section necessitated by excessive fetal growth and gestational diabetes, Defendant terminated Charging Party Gobena's employment.

   (b) Because she was not FMLA eligible when she requested one month of leave to undergo and recover from inpatient treatment for severe anemia, Defendant terminated Jeanne Peake's employment.

**Requiring Employees with Disability to be 100 Percent Healed**

16. Since at least 1999, the inflexible medical leave policy has also contained a provision stating that, for employees who are not eligible for FMLA or who have exceeded their FMLA leave and have therefore been placed on inactive status, "[w]hen the individual is cleared to return to work without restrictions Didlake will accept their application for employment for any open position they may be qualified for." ("the 100-percent healed policy").

17. Pursuant to its 100-percent healed policy, Defendant requires that employees terminated due to the inflexible medical leave policy present a Fitness for Duty Certification without restrictions before they are permitted to reapply for employment, even though qualified individuals with disabilities are entitled to reasonable accommodations. As a result, former employees with ongoing medical issues and those who require reasonable accommodations are denied reemployment.

   (a) For example, pursuant to its inflexible medical leave policy, Defendant terminated Naomi Frye because she required a month of leave after being briefly hospitalized for a psychiatric disorder but was not FMLA eligible. Pursuant to its 100-percent healed policy, Defendant refused to rehire her because, according to her former supervisor, her condition was ongoing.

5

  (b) Pursuant to its inflexible medical leave policy, Defendant terminated Winsome Powell because she required several days of medical leave for a hospitalization and was not FMLA eligible. Pursuant to its 100-percent healed policy, Defendant refused to rehire her with accommodations she requested due to a recurrence of her cervical cancer.

**Failure to Accommodate Deaf and Hard of Hearing Employees**

18. Didlake has employed and continues to employ a significant number of deaf and hard-of-hearing individuals in hourly maintenance and janitorial positions, including but not limited to janitor, custodian clerk, floor equipment or machine operator, floor technician, and groundskeeper ("deaf and hard-of-hearing maintenance and janitorial workers").

19. Didlake, on a continual and recurring basis, has failed to engage in good faith in the interactive process with deaf and hard-of-hearing maintenance and janitorial workers to identify and implement effective reasonable accommodations to facilitate workplace communication, and it has failed to provide communications-based accommodations, including but not limited to American Sign Language ("ASL") interpreters, to enable them to perform the essential functions of their positions and to enjoy equal benefits and privileges of their employment.

20. Didlake has failed to provide reasonable accommodations to deaf and hard-of-hearing maintenance and janitorial workers at numerous job sites.

21. From at least 2016 onward, Didlake routinely held—and continues to hold—mandatory monthly safety meetings for its maintenance and janitorial workers.

22. The mandatory monthly safety meetings last at least twenty to thirty minutes and cover important safety-related topics including instructions for using cleaning chemicals and equipment and, during the pandemic, COVID-19 protocols.

23. For some deaf or hard-of-hearing maintenance and janitorial workers, including but not limited to Susan Cortese and James Hinton, Defendant never or rarely provided qualified interpreters at the mandatory monthly safety meetings.

24. For some deaf or hard-of-hearing maintenance and janitorial workers, including but not limited to Charging Parties Powell and Abebe, and Mohamed Yasin, Defendant failed to consistently provide qualified interpreters, despite regularly scheduling the safety meetings.

25. For some deaf or hard-of-hearing janitorial and maintenance workers defendant provided ineffective interpreters. This includes, but is not limited to, having a manager who was not a professional or certified interpreter try to interpret for Charging Party Powell, using an interpreter for Datrell Scott that he could not understand and vice versa, and, in both instances, continuing to use those interpreters after the employees complained.

26. For others, including but not limited to Jermaine Roberts and his deaf and hard-of-hearing co-workers, Defendant provided written handouts that were difficult to understand, did not convey everything communicated at the meeting, and failed to accommodate the problem of the employee's inability to participate in the meeting.

27. Often, after the mandatory monthly safety meetings, Defendant requires the attendees to take a quiz to demonstrate comprehension of the material presented. In a number of instances, it directed supervisors and co-workers to take quizzes for deaf and hard-of-hearing maintenance and janitorial workers, including but not limited to Charging Party Abebe and James Hinton, who were not accommodated during the meeting and therefore could not understand the presentation.

28. Didlake also required and requires its employees to attend periodic training for the essential functions of its janitor and maintenance positions ("periodic training").

29. Didlake has failed to provide deaf and hard-of-hearing janitorial and maintenance workers, including but not limited to Mohamed Yasin, with interpreting services for periodic training.

30. Didlake has failed to provide interpreting services for deaf and hard-of-hearing janitorial and maintenance workers, including but not limited to Charging Party Powell and Jermaine Roberts, for one-on-one meetings with management and human resources staff, including for meetings about discipline and adverse employment actions, and for performance reviews.

### ADA Claims (Counts I-III).

31. The EEOC incorporates paragraphs 13 through 30.

32. At all relevant times, Gobena, Powell, Abebe and other individuals subjected to the employment practices described in paragraphs 13 through 30 were individuals with disabilities under 42 U.S.C. § 12102(1)(A).

33. At all relevant times, Gobena, Powell, Abebe and other individuals subjected to the employment practices described in paragraphs 13 through 30 were individuals with records of disabilities under 42 U.S.C. § 12102(1)(B).

34. At all relevant times, Defendant was aware of these disabilities and/or records of disabilities.

35. At all relevant times, Gobena, Powell, Abebe and other individuals subjected to the employment practices described in paragraphs 13 through 30 could perform the essential functions of the positions they held or desired with or without reasonable accommodations.

### Count I: Failure to Accommodate

36. The EEOC incorporates paragraphs 13 through 35.

37. Since at least 2015 and continuing to the present, Defendant has engaged in unlawful employment practices in violation of 42 U.S.C. § 12112(b)(5)(A) against Gobena and other qualified individuals with disabilities subjected to the inflexible medical leave policy and against qualified individuals with disabilities subjected to the 100 percent healed policy.

38. Since at least 2016 and continuing to the present, Defendant has engaged in unlawful employment practices in violation of 42 U.S.C. § 12112(b)(5)(A) against Powell, Abebe, and other deaf and hard-of-hearing current or former employees in hourly maintenance and janitorial positions, including but not limited to, janitor, custodian clerk, floor equipment or machine operator, floor technician, and groundskeeper.

39. The unlawful employment practices in Count I include, but are not limited to:

   (a) failing to engage in good faith in the interactive process despite having knowledge of Abebe's, Gobena's, Powell's, and other aggrieved individuals' disabilities and records of disabilities and despite the availability of reasonable accommodations; and

   (b) failing to provide Abebe, Gobena, Powell, and other qualified individuals with disabilities with reasonable accommodations, including but not limited to unpaid medical leave, temporary reassignment of nonessential functions, the use of physical job aids, and the provision of ASL interpreters and other communications-based accommodations.

40. The unlawful employment practices contained in Count I caused Abebe, Gobena, Powell, and other qualified individuals with disabilities emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

41. The unlawful employment practices contained in Count I were done with malice or with reckless disregard to the federally protected rights of Abebe, Gobena, Powell, and other qualified individuals with disabilities.

**Count II: Denial of Employment Opportunities Based on the Need to Make Reasonable Accommodations.**

42. The EEOC incorporates paragraphs 13 through 41.

43. Since at least 2015 and continuing to the present, Defendant has engaged in unlawful employment practices against Gobena, other qualified individuals with disabilities subjected to the inflexible medical leave policy, and qualified individuals with disabilities subjected to the 100-percent healed policy in violation of Section 102 (b)(5)(B) of Title I of the ADA, 42 U.S.C. § 12112(b)(5)(B).

44. The unlawful employment practices include, but are not limited to:

   (a) Pursuant to its inflexible medical leave policy, terminating qualified individuals with disabilities based on their need for unpaid medical leave that is not covered by the FMLA; and

   (b) Pursuant to its 100-percent healed policy, refusing to rehire qualified individuals with disabilities who had previously required medical leave and then required workplace accommodations related to the condition that necessitated the leave.

45. The unlawful employment practices contained in Count II caused Gobena and other qualified individuals with disabilities subjected to the inflexible medical leave policy and qualified individuals with disabilities subjected to the 100-percent healed policy emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

46. The unlawful employment practices contained in Count II were done with malice or with reckless disregard to the federally protected rights of Gobena, other qualified individuals with disabilities subjected to the inflexible medical leave policy, and qualified individuals with disabilities subjected to the 100-percent healed policy.

### Count III: Termination on the Basis of Disability

47. The EEOC incorporates paragraphs 13 through 46.

48. Since at least 2015, Defendant has engaged in unlawful employment practices against Gobena and other qualified individuals with disabilities subjected to the inflexible medical leave policy by terminating them on the basis of disability.

49. The employment practices contained in Count III resulted in loss of employment opportunities and/or adverse employment actions and/or harms against Gobena and other qualified individuals with disabilities subjected to the inflexible medical leave policy.

50. The unlawful employment practices contained in Count III caused Gobena and other qualified individuals with disabilities subjected to the inflexible medical leave policy significant emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

51. The unlawful employment practices contained in Count III were done with malice or with reckless disregard to the federally protected rights of Gobena and other qualified individuals with disabilities subjected to the inflexible medical leave policy.

### Count IV: Retaliation

52. The EEOC incorporates paragraphs 13 through 51.

53. Since at least 2015 and continuing to the present, Defendant has engaged in unlawful employment practices in violation of 42 U.S.C. § 12203(a) by retaliating against Gobena, other former employees subjected to the inflexible medical leave policy, and former employees subjected to the 100-percent healed policy, for engaging in the protected activity of requesting a reasonable accommodation.

54. The employment practices contained in Count IV resulted in the loss of employment opportunities and/or adverse tangible employment actions, including but not limited to termination and denial of reemployment, and/or harms against Gobena, other former employees subjected to the inflexible medical leave policy, and former employees subjected to the 100-percent healed policy.

55. The unlawful employment practices contained in Count IV caused Gobena, other former employees subjected to the inflexible medical leave policy, and former employees

subjected to the 100-percent healed policy significant emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

56. The unlawful employment practices contained in Count IV were done with malice or with reckless disregard to the federally protected rights of Gobena, other former employees subjected to the inflexible medical leave policy, and former employees subjected to the 100-percent healed policy.

## VI.   PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination or retaliation, and engaging in any other employment practices that discriminate on the basis of disability or protected activity.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities, and that eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Gobena, other qualified individuals with disabilities subjected to the inflexible medical leave policy, and qualified individuals with disabilities subjected to the 100-percent healed policy, by providing appropriate back pay, including all forms of compensation and lost benefits, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the reinstatement or front pay in lieu thereof.

D.  Order Defendant to make whole Gobena, other qualified individuals with disabilities subjected to the inflexible medical leave policy, and qualified individuals with disabilities subjected to the 100-percent healed policy by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

E.  Order Defendant to make whole Abebe, Gobena, Powell, and all other individuals subjected to any violation set forth in counts I-IV by providing compensation for past and future non-pecuniary losses resulting from Defendant's unlawful employment practices, including emotional and mental anguish, pain and suffering, stress, humiliation, and frustration in amounts to be determined at trial.

F.  Order Defendant to pay Abebe, Gobena, Powell, and all other individuals subjected to any violation set forth in counts I-IV punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

G.  Grant such further legal or equitable relief as the Court deems necessary and proper to the public interest.

H.  Award the EEOC its costs of this action.

## VII. JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

GWENDOLYN REAMS
General Counsel

/s/ Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney
Maryland Bar No. 04312

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney
EEOC
Washington Field Office
131 M Street, N.E., Suite 4NWO2F
Washington, D.C. 20507
maria.morocco@eeoc.gov
Phone: 202-419-0724

/s/ R. Sam Wallace
R. SAM WALLACE
Trial Attorney
EEOC
Philadelphia District Office
801 Market St., Suite 1300
Philadelphia, PA 19107
sam.wallace@eeoc.gov
Phone: 267.589.9762
Fax: 215.440.2848

Date: September 26, 2023